IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN CARROLL and KIMBERLY CARROLL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:14-cv-02902-STA |
| NATIONWIDE PROPERTY & CASUALTY CO., | ) ) ) ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES**

Before the Court is Defendant Nationwide Property & Casualty Insurance Company's Motion to Dismiss the Plaintiffs' Punitive-Damages Claim, filed April 6, 2015. (ECF No. 20). Plaintiffs John and Kimberly Carroll filed their Response on the same day (ECF No. 21), to which Nationwide filed its Reply on April 22, 2015. (ECF No. 24). For the reasons set forth below, Nationwide's Motion to Dismiss Plaintiffs' Punitive-Damages Claim is **DENIED.**

**BACKGROUND**

Plaintiffs John and Kimberly Carroll filed their Amended Complaint with the Court's leave on March 20, 2015. (Am. Compl., ECF No. 18). They allege that Nationwide "wrongfully failed and/or refused to fully and promptly pay Plaintiffs' claim for insurance proceeds." (*Id.* ¶ 14). The Carrolls state that they submitted a proof of loss to Nationwide indicating a net claim of $639,436.59. (*Id.* ¶ 15). Payment was due within 60 days, but the Carrolls allege that Nationwide breached its obligation to pay. (*Id.* ¶ 17). They seek the statutory bad-faith penalty under Tennessee Code section 56-7-105 and punitive damages "not to exceed $5,000,000." (*Id.*

1

¶¶ 31-35, prayer for relief). In the instant Motion, Nationwide presents a narrow issue for the Court's review: whether, under Tennessee law, the Carrolls' statutory bad-faith claim under section 56-7-105 precludes punitive damages arising from the same conduct. Nationwide asserts that sections 56-7-105 and the recently enacted section 56-8-113 operate to preclude any claim for punitive damages in this lawsuit, and therefore the Court should grant Nationwide's motion to dismiss the Carrolls' punitive-damages claim. The Carrolls argue that both are available.

## STANDARD OF REVIEW

### I. Motions to Dismiss

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party.[1] Legal conclusions or unwarranted factual inferences, however, need not be accepted as true.[2] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[3] Under Rule 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of

---

[1] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[2] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[3] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[4] Fed. R. Civ. P. 8(a)(2).

action."[5] In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]

## II. Federal Court's Application of State Law

The Sixth Circuit Court of Appeals held that "[w]hen construing questions of state law, '[i]f the state's highest court has not addressed the issue, [a] federal court must attempt to ascertain how that court would rule if it were faced with the issue.'"[8] A court "may use the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule in making this determination."[9] More importantly here, "a federal court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."[10]

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); s*ee also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

[6] *Twombly*, 550 U.S. at 555, 570.

[7] *Iqbal*, 556 U.S. at 678.

[8] *Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 732 (6th Cir. 2012) (quoting *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)).

[9] *Meridian Mut. Ins. Co.*, 197 F.3d at 1181 (citing *Grantham & Mann. v. Am. Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987)).

[10] *Id.* (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

## DISCUSSION

### I. Bad-Faith Statute and Punitive Damages

Nationwide's argument hinges on the relationship between two statutes. First, Tennessee's bad-faith statute, section 56-7-105, provides that

> in all cases when a loss occurs and [insurance companies] refuse to pay the loss within sixty (60) days after a demand has been made by holder of the policy or fidelity bond on which the loss occurred, [insurance companies] shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.[11]

In *Myint v. Allstate*, the Tennessee Supreme Court held that this bad-faith penalty did not preclude plaintiffs in insurance cases from also pursuing claims for treble damages under the Tennessee Consumer Protection Act ("TCPA").[12] In other words, the TCPA was "complementary legislation" to the insurance bad-faith statute: plaintiffs could seek both remedies.[13] In 2011, however, the Tennessee General Assembly passed Tennessee Code section 56-8-113 in response to *Myint*, precluding certain remedies and sanctions in the insurance context:

> Notwithstanding any other law, title 50 and this title shall provide the sole and exclusive statutory remedies and sanctions applicable to an insurer, person, or entity licensed, permitted, or authorized to

---

[11] Tenn. Code Ann. § 56-7-105.

[12] *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 925 (Tenn. 1998).

[13] *Id.*

> do business under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance as such term is defined in § 56-7-101(a). Nothing in this section shall be construed to eliminate or otherwise affect any:
> > (1) Remedy, cause of action, right to relief or sanction available under common law;
> > (2) Right to declaratory, injunctive or equitable relief, whether provided under title 29 or the Tennessee Rules of Civil Procedure; or
> > (3) Statutory remedy, cause of action, right to relief or sanction referenced in title 50 of this title.[14]

The passage of this statute eliminated the availability of treble damages under the TCPA in a breach-of-insurance-contract action arising after April 29, 2011. Although it is clear that the passage of section 56-8-113 precluded statutory remedies outside titles 50 and 56, the instant question before the Court is different: does section 56-8-113 also preclude a plaintiff from seeking common-law punitive damages?

### A. Statutory Interpretation

The Tennessee Supreme Court provides the template for interpreting the statutes before this Court:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn.

---

[14] Tenn. Code Ann. § 56-8-113.

> 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (Tenn. 1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (Tenn. 1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).[15]

Tennessee courts should "not apply a particular interpretation to a statute if that interpretation would yield an absurd result."[16] Here, the plain meaning of the statutes as written, combined with the state of the law at the passage of section 56-8-113, require the Court's holding that punitive damages are available to the Carrolls.

**B. Analysis**

In *Heil Co. v. Evanston Insurance Co.*, the Sixth Circuit held that section 56-7-105 "precludes punitive damages . . . because it provides the exclusive extracontractual remedy for an insurer's bad faith refusal to pay on a policy."[17] Because *Heil* involved claims predating the effective date of the new section 56-8-113, the *Heil* court did not analyze its application. Instead, its holding was that section 56-7-105 "precluded punitive damages, even where they attached to a common law breach of contract."[18] The statutory amendments, then, could have no effect on the *Heil* court's decision with regard to punitive damages, which the court held were

---

[15] *In re Estate of Tanner*, 295 S.W.3d 610, 613–14 (Tenn. 2009).

[16] *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000).

[17] *Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 728 (6th Cir. 2012) (citing *Mathis v. Allstate Ins. Co.*, 959 F.2d 235 (6th Cir. 1992)).

[18] *See Am. Nat'l Prop. & Cas. Co. v. Stutte*, No. 3:11-CV-219, 2015 U.S. Dist. LEXIS 48726, at *6 (E.D. Tenn. Apr. 14, 2015) (citing *Heil*, 690 F.3d at 728).

6

already precluded by section 56-7-105. Following *Heil*'s reasoning, several courts within this circuit decided likewise—even after the passage of section 56-8-113—that punitive damages are precluded by both statutes.[19]

In 2013, however, the Tennessee Court of Appeals declined to follow *Heil* in *Riad v. Eire Insurance Exchange*, another case based on pre-2011 facts. The *Riad* Court noted that *Heil* "ignore[d] the *Myint* progeny of cases, providing for the application of the TCPA to cases filed prior to the applicability of section 56-8-113." Thus, the plaintiff "was entitled to recover any damages applicable in breach of contract actions and was not statutorily limited to the recovery of the insured loss and the bad faith penalty."[20] Furthermore, the damages available in breach-of-contract actions before 2011 *included punitive damages*, although only in rare cases.[21] As the Eastern District of Tennessee noted in 2015, *Riad*'s holding revealed a conflict:

> Although the Tennessee Supreme Court has not spoken on the issue, it is apparent . . . that there is a conflict between the state appellate courts' interpretation of the bad faith penalty and UTPA in *Riad* and the Sixth Circuit's interpretation of the same as it applies to the availability of *common law punitive damages*. . . . Simply stated, federal trial courts and the Sixth Circuit Court of Appeals have both considered cases arising before the 2011

---

[19] *See Jeffers v. Metro. Life Ins. Co.*, No. 3:13-0065, 2014 U.S. Dist. LEXIS 12658, at *9–10 (M.D. Tenn. Jan. 2, 2014) (citing *Heil Co.*, 690 F.3d at 728; *Westfield Ins. Co. v. RLP Partners, LLC*, No. 3:13-00106, 2013 U.S. Dist. LEXIS 75673, at *10 (M.D. Tenn. May 30, 2013)). A court in this district persuasively distinguished these cases. *See* Order Denying Def.'s Mot. to Dismiss Pls.' Claim for Punitive Damages, *Lindenberg v. Jackson Nat'l Fire Ins. Co.*, No. 2:13-cv-02657-JPM-cgc (W.D. Tenn. Dec. 9, 2014), ECF No. 124.

[20] *Riad v. Erie Ins. Exch.*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013).

[21] *Id.* ("Punitive damages, while generally 'not available in a breach of contract case,' may be awarded in a breach of contract action under 'certain circumstances.'" (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 211 n.2 (Tenn. 2012))). The Tennessee Supreme Court, in the *Rogers* footnote, clearly acknowledged the availability—although infrequent—of punitive damages in the most egregious breach-of-contract cases. Furthermore, the cases it cited were decided well before the 2011 insurance amendments that expressly preserved remedies available under the common law at the time of enactment.

7

amendments and found that the bad faith statute precluded common law punitive damages not provided therein, while the Tennessee Court of Appeals found that there was no such preclusion.[22]

Finding "no 'other persuasive data' that the Tennessee Supreme Court" would disagree with the *Riad* court's statutory construction and its citation to the *Myint* progeny of cases, the Eastern District of Tennessee allowed the plaintiffs to seek common-law punitive damages alongside the statutory bad-faith penalty.[23] This Court agrees.

*Lindenberg v. Jackson National Life* is also persuasive on the question before the Court.[24] In *Lindenberg*, a court in this district held that Tennessee law allowed punitive damages in breach-of-insurance-contract actions alleging statutory bad faith. Declining to follow *Heil* and relying on *Riad*, the district court noted that the Tennessee Supreme Court's decision in *Myint* allowed punitive-damage awards alongside claims under section 56-7-105. Furthermore, "all case law cited in the *Heil* opinion to support the finding that § 105 precluded punitive damages predated the Tennessee Supreme Court's *Myint* opinion which issued June 1, 1998."[25] Having determined that section 105 did not preclude punitive damages in actions alleging statutory bad faith, the question left to the *Lindenberg* court was whether the 2011 amendments precluded punitive damages in breach-of-insurance-contract claims. First, although the General Assembly's passage of section 56-8-113 was a repudiation of *Myint*, *Myint*'s fundamental

---

[22] *Am. Nat'l Prop. & Cas. Co.*, 2015 U.S. Dist. LEXIS 48726, at * 8–9 (noting that other cases did not address a post-2011 case involving common-law punitive damages).

[23] *Id.* at *9–11 (citing *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981)).

[24] Order Denying Def.'s Mot. to Dismiss Pls.' Claim for Punitive Damages, *Lindenberg v. Jackson Nat'l Fire Ins. Co.*, No. 2:13-cv-02657-JPM-cgc (W.D. Tenn. Dec. 9, 2014), ECF No. 124.

[25] *Id.* at 19–20.

holding was that section 56-7-105 did not preclude claims under the TCPA. Section 56-8-113, in response to *Myint*, states that "this title shall provide the sole and exclusive statutory remedies and sanctions . . . under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance."[26] Relying on the series-qualifier canon of statutory construction,[27] the *Lindenberg* court reasoned that

> [b]ecause the terms "remedies" and "sanctions" are not separated by a comma, a plain reading of the phrase "statutory remedies and sanctions" reveals that both "remedies" and "sanctions" are modified by "statutory." The Court therefore finds that the Tennessee General Assembly intended the scope of § 113 to be limited to remedies and sanctions of a statutory nature. Consequently, § 113 did not disturb the availability of common law "remedies and sanctions," which the *Myint* and *Riad* decisions affirmed were available prior to the enactment of § 113.
> . . . .
> Moreover, the text of § 113 states explicitly that "[n]othing in this section shall be construed to eliminate or otherwise affect any . . . [r]emedy, cause of action, right to relief or sanction available under *common law*. . . ." Tenn. Code Ann. § 56-8-113(1) (emphasis added).[28]

The *Lindenberg* court also addressed the rebuttal presented by the Defendant here: that all cases relied upon by the Plaintiffs to support the availability of punitive damages pre-date the enactment of section 56-8-113. But this argument "is of no moment in the present case, where

---

[26] Tenn. Code Ann. § 56-8-113.

[27] *See United States v. Laraneta*, 700 F.3d 983, 989 (7th Cir. 2012) ("[A] modifier at the beginning or end of a series of terms modifies all the terms."), *cert. denied*, 134 S. Ct. 235 (2013); *see also* Antonin Scalia & Brian Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012). The series-qualifier canon, like the last-antecedent canon, is a "language canon[] . . . which only provide[s] presumptions for interpreting words and syntax." *In re Estate of Tanner*, 295 S.W.3d 610, 628 (Tenn. 2009) (citing Andrew C. Spiropoulos, *A Defense of Substantive Canons of Construction*, 2001 Utah L. Rev. 915, 934). Applying the canon, the statute can only have one meaning in light of the General Assembly's knowledge of contemporaneous law.

[28] Order Denying Def.'s Mot. to Dismiss Pls.' Claim for Punitive Damages 19–20, *Lindenberg v. Jackson Nat'l Fire Ins. Co.*, No. 2:13-cv-02657-JPM-cgc (W.D. Tenn. Dec. 9, 2014) (first alteration added).

[the plaintiff] assert[s] a common law claim that was available at the time of the enactment of § 113,"[29] rather than statutory claims under the TCPA, which are precluded by section 113.

Nationwide's nebulous argument that the General Assembly intended the 2011 amendments to "undo any broadening of remedies available to insureds that had been created judicially" fails to take into account the text of the statute, which protects common-law remedies then-available under the common law.[30] If punitive damages were available under the common law prior to section 56-8-113's enactment, then the statute's plain language keeps the remedy intact. Furthermore, if the General Assembly understood the state of the law at the time it amended the insurance statutes—a fact the Court presumes[31]—and it intended to eliminate the availability of punitive damages in breach-of-insurance-contract cases, then it would not have included an express provision retaining then-existing common-law remedies.

In summary, despite the Sixth Circuit's 2012 ruling in *Heil*, the Court sees no persuasive data that the Tennessee Supreme Court would rule contrary to *Riad*. Tennessee law allowed claims for punitive damages in breach-of-insurance-contract cases. Section 56-7-105 did not preclude punitive damages in such cases, according to *Riad*. Likewise, while the plain language of 56-8-113 precludes certain statutory remedies, its plain language also keeps intact the common-law remedies available at enactment. If the Tennessee General Assembly wished to

---

[29] *Id.* at 20; *see also id.* at 13–15 (finding that "at the time *Myint* was decided, punitive damages were available to plaintiffs in a breach of contract action against an insurer in addition to the remedies available under [section 56-7-105]").

[30] *See* Def.'s Mem. in Supp. Mot. to Dismiss 6, ECF No. 20-1.

[31] *See Wilson v. Johnson City*, 879 S.W.2d 807, 810 (Tenn. 1994).

eliminate common-law punitive damages in cases such as this one, it did the opposite with section 56-8-113. The Carrolls may seek punitive damages.[32]

**II. Cap on Punitive Damages**

Nationwide also argues that Tennessee Code section 29-39-104 limits the amount of punitive damages available in this case. The statute provides that "[i]n a civil action in which punitive damages are sought:"

> (5) Punitive or exemplary damages shall not exceed an amount equal to the greater of:
> (A) Two (2) times the total amount of compensatory damages awarded; or
> (B) Five hundred thousand dollars ($500,000) . . . .[33]

The Carrolls' response to Nationwide's argument is that the cap does not apply to punitive damages in breach-of-contract cases. At this stage, however, the Court declines to rule on the issue. If the cap applies, it will have no relevance to the case unless a jury finds that the Carrolls are entitled to punitive damages. Moreover, Tennessee law prohibits disclosure of the limitation to the jury;[34] therefore, the Court need not address the cap's applicability at this juncture.

---

[32] Whether the Carrolls may actually be awarded both a penalty under the bad-faith statute as well as punitive damages is not an issue before the Court.

[33] Tenn. Code Ann. § 29-39-104(a)(5).

[34] *Id.* § 29-39-104(a)(6).

## CONCLUSION

Nationwide's Motion to Dismiss the Carrolls' Claim for Punitive Damages is **DENIED**. The Court defers ruling on whether Tennessee's statutory cap on punitive damages applies in breach-of-contract cases.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
HON. S. THOMAS ANDERSON
UNITED STATES DISTRICT COURT

Date: June 8, 2015.